## **EMPLOYMENT AGREEMENT**

**THIS EMPLOYMENT AGREEMENT** is entered into and effective as of April 29, 2019 by and between **SOLARX EYEWEAR, LLC** with its principal place of business at 14850 Foltz Parkway, Strongsville, Ohio 54665, an Ohio limited liability company ("COMPANY"), and Hans Wilz with his principal residence at 1549 North Van Buren Avenue, Ottumwa, Iowa 52501 ("EMPLOYEE");

## **WITNESSETH:**

WHEREAS, COMPANY and EMPLOYEE now desire to enter into an Employment Agreement as set forth herein by which COMPANY engages the services of EMPLOYEE as sales representative of COMPANY and to set forth the rights and duties of the parties hereto; and

NOW, THEREFORE, In consideration of Employee's employment with the Company and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee covenants and agrees as follows:

1. **Termination of Prior Agreements.** COMPANY and EMPLOYEE hereby terminate any and all prior agreements, whether oral or written, between the parties relating to EMPLOYEE'S employment.

2. **Employment.**

    (a) COMPANY hereby employs EMPLOYEE, and EMPLOYEE hereby accepts employment, upon the terms and conditions hereinafter set forth.

    (b) EMPLOYEE shall devote such business time as may be required to his employment and shall perform diligently such duties as are, or may be, required by the COMPANY or their designee, which duties shall be within the bounds of reasonableness and acceptable business standards and ethics. EMPLOYEE maintains outside business interests unrelated to COMPANY.

    (c) During the term of this Employment Agreement, EMPLOYEE shall not, without the prior written approval of the management of COMPANY, directly or indirectly, render services of a business, professional or commercial nature to any other person or firm, whether for compensation or otherwise, other than in the performance of duties naturally inherent in the businesses of COMPANY or any subsidiary or affiliate of COMPANY; provided, however, EMPLOYEE may continue to render services to and participate in philanthropic and charitable causes, in each case, in a manner and to the extent consistent with his past practice.

    (d) During the term of this Employment Agreement, EMPLOYEE shall comply with all policies and procedures of COMPANY, including but not limited to, all terms



Page 1 of 13

and conditions set forth in any EMPLOYEE handbook, which is attached as **Exhibit A** and any other memoranda pertaining to COMPANY's policies, procedures, rules and regulations. Failure to comply in all material respects with all such policies and procedures shall be grounds for disciplinary action, including termination of employment.

3. **Term and Position.**

   (a) COMPANY employs EMPLOYEE, and EMPLOYEE accepts such employment for a guaranteed period of three years. Prior to the third anniversary of this agreement, EMPLOYEE and COMPANY will negotiate a new agreement to their mutual satisfaction. Termination of employment under the provisions of this section shall not affect the provisions of Section 7 hereof, which are intended to survive termination of employment.

   (b) EMPLOYEE shall serve in such capacity as listed on **Exhibit B** attached hereto, which may be amended from time to time by COMPANY MANAGEMENT in consultation with EMPLOYEE, or in such other offices or positions with COMPANY as shall be determined by the management of COMPANY, without, however, any change in EMPLOYEE's compensation or benefits listed on **Exhibit B**.

4. **Compensation.**

   (a) Subject to the provisions of this Employment Agreement, for all services which EMPLOYEE may render to COMPANY during the term of this Employment Agreement, EMPLOYEE shall receive a base salary as listed on **Exhibit B**, which shall be payable in equal, consecutive biweekly installments. EMPLOYEE shall be reimbursed for all COMPANY related travel and other approved expenses.

   (b) Subject to the provisions of this Employment Agreement, for all services which EMPLOYEE may render to COMPANY during the term of this Employment Agreement, EMPLOYEE shall earn commissions as listed on **Exhibit B**, which shall be payable in quarterly installments.

5. **Other Benefits.**

   (a) Subject to the provisions of this Employment Agreement, for all services which EMPLOYEE may render to COMPANY during the term of this Employment Agreement, EMPLOYEE shall receive benefits as listed on **Exhibit B**. During the term of this Employment Agreement, EMPLOYEE shall be entitled to such vacation privileges, life insurance, medical and hospitalization benefits, and such other benefits as are typically provided to other employees of COMPANY in comparable positions.

(b) EMPLOYEE will receive Health Benefits for himself and will have the option of purchasing health coverage for his spouse and children at the same cost available to any other employee of COMPANY.

(c) EMPLOYEE will be named to the Board of Directors of SolarX EYEWEAR LLC as a non-voting director.

(d) Any membership rewards earned on purchases paid for directly by EMPLOYEE, including expenses that are reimbursed, will be the property of EMPLOYEE.

(e) Participation in the COMAPANY'S 401(K) Investment Plan.

6. **Termination and Further Compensation.** COMPANY may terminate Employee only for Cause and with notice. In the event of termination of the Employment Agreement by COMPANY for any reason other than Cause, EMPLOYEE shall be entitled to all further salary, bonus or other benefits due hereunder through the end of the term. Termination of employment under the provisions of this section shall not affect the provisions of Section 7 hereof, which are intended to survive termination of employment. As used herein, "Cause" means
   a) the commencement of any proceeding by or against EMPLOYEE or his property under any law dealing with bankruptcy, insolvency, receivership or other relief of debtors;
   b) EMPLOYEE'S making or furnishing to the COMPANY any warranty, representation or statement that was false or misleading in any material respect when so made or furnished;
   c) the unauthorized or improper use by EMPLOYEE of any of the Company marks or intellectual property contrary to the provisions of this Agreement;
   d) the death of the EMPLOYEE or his conviction of a felony (or plea of *nolo contendere* for) fraud, theft, embezzlement, or crime of moral turpitude; and/or
   e) EMPLOYEE'S commission of an act of gross negligence, willful misconduct, or breach of fiduciary duty..

7. **Covenants Regarding Non-competition and Confidential Information.**

(a) **Non-Disclosure** - Employee covenants and agrees so long as this Agreement is in effect, and after the termination of this Agreement, that:

(i) Without the prior written consent of Company, Employee shall not at any time, directly or indirectly, use for Employee's own benefit or purposes or for the benefit or purposes of any other person, firm, partnership, association, corporation or business organization, or disclose to any person, firm, partnership, association, corporation or business organization, any trade secrets, information, data, know-how or knowledge (including, but not limited to, trade secrets, information, data, know-how or knowledge relating to customers, clients, products, technical services, business methods and techniques, print outs, reports, market development programs, revenues, costs, pricing structures, management practices, manuals, contracts, documents, designs, computer programs, computer operating systems, computer applications, software designs,

inventions, processes, plans, equipment, or employees) belonging to, or relating to the affairs of the Company except where required in good faith to transact the business of the Company.

(ii) Employee shall return to the Company, at its request, and in any event within three (3) days after termination of Employee's services, in good condition, reasonable wear and tear excepted, all documentation and records which are the property of Company and any and all copies thereof, including, but not limited to, all manuals, promotional and instructional materials, and similar aids and equipment, all correspondence, customer lists, files, plans, contracts, cost and pricing structures, accounting records, memoranda and reports as well as all of Company's equipment and other property in Employee's hands or under Employee's control at the time of the termination of Employee's employment.

(iii) Employee shall keep in strict confidence all trade information, product data, technical services, management practices, business and pricing methods and techniques, marketing and business development plans, financial information, contracts, forms, documents, designs, computer programs, software designs, processes, plans, customer and prospect lists, and any other trade secrets or confidential information concerning Company's business and its methods of doing business.

**(b)** **Non-Competition**

(i) Subject to subsection (iv) listed below and only in the event Employee is terminated by the Company for Cause or Employee leaves the employ of Company on Employee's own accord, Employee acknowledges that, during the course of Employee's employment, Employee has been and will be dealing with confidential information, trade secrets and business methods which are the Company's property. Employee further acknowledges that the training, materials, designs, processes, product data, Improvements, customer lists and other confidential information and trade secrets, all provided to Employee by Company, are of value to the Company and that it is reasonable and necessary for the protection of Company that the Employee not compete with Company within the area and for the duration hereinafter set forth. Employee further agrees that Employee's ability to work and earn a living will not be unreasonably restrained by the application of the restrictions set forth below. Accordingly, Employee covenants and agrees that Employee shall not, for the term hereof and for a period of twenty four (24) months following the termination of Employee's employment with Company, for any reason (the "Restricted Period"), directly or indirectly (which means acting alone, as a sole proprietor, as a partner, employee or agent of a partnership; as an officer, director, employee or shareholder or agent of any other corporation, business or enterprise; or as a trustee, fiduciary, consultant, independent contractor, agent or other representative) engage in any or all of the following activities within the Restricted Area (as defined below):
1. Become employed or affiliated in any capacity with, perform services of any type on behalf of, or enter into or engage in any business or other pursuit that competes with and/or is similar to the Company's business in any way; or

2. Promote the business of any person, firm, association, or corporation engaged in a business which competes with and/or is similar in any way with the business of the Company; or

3. Solicit, divert or take away or attempt to solicit, divert, or take away, any of the Company's customers, clients, accounts, sales and/or service representatives, independent contractors or subcontractors, agents, employees, suppliers or patronage; or

4. Attempt to seek or cause any of Company's customers, clients, accounts, sales and/or service representatives, independent contractors or suppliers to refrain from patronizing Company; or

5. Knowingly employ or engage or attempt to employ or engage in any capacity any person employed by Company or any sales and/or service representative, independent contractor or agent of the Company during the period of one (1) year prior to Employee's termination.

(ii) For purposes of this Agreement, the "Restricted Area" shall be defined in relation to the geographic scope of activities carried on by Employee on the Company's behalf during the term of Employee's employment. For example, if Employee's duties are those of upper management and he or she directs, controls, or influences activities on behalf of the Company which are nationwide in scope, the Restricted Area shall be the United States of America and the territories thereof. If, however, Employee is in middle management and his or her activities relate to a specific geographic area such as a state of the United States or other region of the country, then the Restricted Area shall be that state or region. For inside or outside sales employees, the Restricted Area shall be every state which includes any part of the sales territory or region for which that salesperson has been responsible or partially responsible while in the Company's employ. These examples are by no means all inclusive. They are set forth as the most common examples of the Restricted Area intended to be covered by this Agreement.

(iii) Employee agrees that each of the above covenants are separate and distinct covenants, independent of each other, and that the illegality or invalidity of any one or more of them or any part of one or more of them shall not render the others illegal or invalid, and that if the invalidity or unenforceability is due to the unreasonableness of the time or geographic area covered by said covenants, said covenants shall nevertheless be enforced to the maximum extent permitted by law and effective for such period of time and for such area as may be determined to be reasonable by a court of competent jurisdiction. Employee further acknowledges that these restrictive covenants are essential to this Agreement and have been narrowly drafted and tailored. Without these restrictive covenants in place, the Company and Employee would not have entered into this Agreement.

(iv) Despite anything to the contrary contained herein, Employee is permitted to engage in illustration practices and/or design business with third parties so long as such work does not compete with any artwork created or duties performed by Employee on behalf of the Company.

With specific reference to any ornament design, personalized products, and/or any type of subject matter featured in any Company catalog (the "Protected Classes"), both Company and Employee agree that Employee shall not provide any design or illustration work to any third parties within these Protected Classes. Furthermore, Employee agrees to keep all information regarding Company designs confidential and will not disclose any aspect of the design process to any third party, unless written consent is given by Company. Notwithstanding the generality of the foregoing, EMPLOYEE may reasonably conclude EMPLOYEE'S and EMPLOYEE'S affiliates' business relationship with Kurt S. Adler, and for so long as the relationship is concluding, but in no event later than September 30, 2019, EMPLOYEE shall not be in violation of this Employment Agreement.

**8.    Severable Provisions.** The provisions of this Employment Agreement are severable and if any one or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions and any partially unenforceable provision to the extent enforceable in any jurisdiction shall, nevertheless, be binding and enforceable.

**9.    Choice of Law, Venue.** This Agreement and any dispute arising from or in relation to it shall be governed by and construed in accordance with the laws of the State of Ohio. Venue of any action or dispute of any kind arising from or relating to Employee's employment with Company is limited exclusively to the Courts of the State of Ohio, provided, however, that the Company shall have the right to seek injunctive relief in any court of competent jurisdiction. Employee acknowledges and agrees that this Agreement may be assigned by the Company without Employee's consent.

**10.    Notices**
(a)    Each notice, request, demand or other communication ("**Notice**") by either party to the other party pursuant to this Employment Agreement shall be in writing and shall be personally delivered or sent by U.S. certified mail, return receipt requested, postage prepaid, or by nationally recognized overnight commercial courier, charges prepaid, or by facsimile transmission (but each such Notice sent by facsimile transmission shall be confirmed by sending a copy thereof to the other party by U.S. mail or commercial courier as provided herein no later than the following business day), addressed to the address of the receiving party or to such other address as such party shall have communicated to the other party in accordance with this Section. Any Notice hereunder shall be deemed to have been given and received on the date when personally delivered, on the date of sending when sent by facsimile, on the third business day following the date of sending when sent by mail or on the first business day following the date of sending when sent by commercial courier.
(b)    If a Notice is to COMPANY, then such Notice shall be addressed to Mr. John Norris, 14850 Foltz Industrial Parkway, Strongsville Ohio 44149.
(c)    If a Notice is to EMPLOYEE, then such Notice shall be addressed to Hans Wilz at his home address last known on the payroll records of COMPANY.

**11.    Waiver.** The failure of either party to enforce any provision or provisions of this Employment Agreement shall not in any way be construed as a waiver of any such provision or

provisions as to any future violations thereof, nor prevent that party thereafter from enforcing each and every other provision of this Employment Agreement. The rights granted the parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such party's right to assert all other legal remedies available to it under the circumstances.

**IN WITNESS WHEREOF**, the parties have executed this Employment Agreement on the day and year first set forth above.

| WITNESS: | EMPLOYER |
| --- | --- |
| | **SOLARX EYEWEAR, LLC** |
| By:_____ | By:_____ |
| Printed Name:_____ | Name: Mr. John Norris |
| | Its:   Vice President |

| **WITNESS** | **EMPLOYEE** |
| --- | --- |
| By:_____ | _____ |
| Printed Name:_____ | Printed Name: Mr. Hans Wilz |

provisions as to any future violations thereof, nor prevent that party thereafter from enforcing each and every other provision of this Employment Agreement. The rights granted the parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such party's right to assert all other legal remedies available to it under the circumstances.

IN WITNESS WHEREOF, the parties have executed this Employment Agreement on the day and year first set forth above.

**WITNESS:**

By: /s/ Rana E. Brusich

Printed Name: Laura Brusich

**EMPLOYER**

**SOLARX EYEWEAR, LLC**

By: /s/ John Norris

Name: Mr. John Norris

Its:  Vice President

**WITNESS**

By:_____

Printed Name:_____

**EMPLOYEE**

_____

Printed Name:  Mr. Hans Wilz